FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

2013 JUN 19  PM 4: 53

CLERK

BY_____DEP. CLK

| | |
|---|---|
| **NANCY M. MARESH** | **CIVIL ACTION # 13 CV 00829** |
| *PLAINTIFFS* | |
| *V.* | |
| **WASHINGTON MUTUAL BANK, F.A.;** | **SECOND AMENDED VERIFIED** |
| **JPMORGAN CHASE BANK N.A.; THE** | **COMPLAINT** |
| **HOPP LAW FIRM, LLC; ROBERT J.** | |
| **HOPP & ASSOCIATES, LLC; ROBERT** | **DEPRIVATION OF DUE PROCESS** |
| **J. HOPP, INDIVIDUALLY &** | |
| **CORPORATE CAPACITY; THE** | **CONSPIRACY** |
| **CASTLE LAW GROUP, LLC; LARRY** | |
| **CASTLE INDIVIDUALLY &** | **BREACH OF CONTRACT** |
| **CORPORATE CAPACITY; HUSCH** | **THEFT BY DECEPTION** |
| **BLACKWELL, LLP; MARK BELL,** | |
| **CORPORATE & INDIVIDUALLY; THE** | **DECLARATORY RELIEF** |
| **BOULDER COUNTY PUBLIC** | |
| **TRUSTEE; COLIN ZIMMERMAN,** | **JURY TRIAL DEMANDED** |
| **CORPORATE CAPACITY AS DEPUTY** | |
| **TRUSTEE & INDIVIDUALLY; JOHN** | |
| **AND JANE DOES** | |
| **1-100.** | |
| *DEFENDANTS* | |

---

## PART ONE - <u>INTRODUCTORY STATEMENT</u>

A series of harmful and illegal events involving real property at 329 County Road 87J, Jamestown

CO 80455 has taken place over a period of 11 years. This case begins with an adjustable rate

mortgage in 2002 and identifies grave actions against Plaintiff at Boulder District Court June 12

through June 14, 2013.  Plaintiff identifies parties, dates, rights that were violated, harm and remedy

for each Defendant Plaintiff knows this document need not and cannot provide evidence but reflects here true telling of what has happened.

This action arises in TWO separate parts: **PART ONE** is out of Defendants' interference with petitioner's due process and equal protections in the Rule 120 which was part of a broad conspiracy to deprive homeowners of due process in foreclosure proceedings in order to advance their financial interest. State action exist when the legislature made and passed HB 1387-- a procedurally defective procedure under section 1 of the 14th amendment which is enforced in the Rule 120 foreclosure proceeding also in violation of section 1 of the 14th amendment and which was the first overt act in a broad conspiracy to deprive homeowners of due process by defendants Larry Castle, Robert J. Hopp & Associates, LLC, The Hopp Law Firm, LLC and Robert J. Hopp, Husch Blackwell, LLP and Mark Bell of Husch Blackwell and The Boulder County Public Trustee and Colin Zimmerman as Deputy Trustee and Individually, Washington Mutual Bank, F.A. and JPMorgan Chase Bank, N.A. **In PART TWO** Plaintiffs will further show that defendants have willfully, intentionally and wantonly engaged in a conspiracy through misrepresentation, deception and concealment, with the intent to cause great financial harm and injury to Plaintiff, for the Defendants unjust enrichment.

**COMES NOW** Plaintiff Nancy M Maresh brings this lawsuit against Defendants Washington Mutual Bank, F.A., JPMorgan Chase Bank, N.A., Robert J. Hopp & Associates, LLC, The Hopp Law Firm LLC, Robert J. Hopp, The Castle Law Group, LLC and Larry Castle, Husch Blackwell LLP and Mark Bell, The Boulder County Public Trustee and Colin Zimmerman, Individually and as Deputy Trustee, for money damages and complains and alleges as follows:

## JURISDICTION and VENUE

PART ONE Jurisdiction of this court arises under 28 U.S.C. §§. 1331(Federal Question Jurisdiction), 1337, 1343(a), 1948, 1949 and 1367(a); 42 U.S.C. §§. 1983 (civil action for deprivation of rights), 1985(3) (conspiracy to interfere with civil rights), 1988 (proceedings in vindication of civil rights); 14TH Amendment, and the 1st and 5th Amendment; National Bank Act.

PART ONE AND PART TWO possesses original jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1332(a) since the amount in controversy is over $75,000.00; citizenship diversity jurisdiction is provided pursuant to 28 U.S.C. §1332(a)(1) with corporate citizenship diversity status of the defendants satisfied under §1332(c)(1) and supplemental jurisdiction over Plaintiffs State Claims, pursuant to U.S.C. §§1367. For both parts, This Court has authority to award Plaintiffs damages under 28 U.S.C. §1343(a)(1)(2)(3)(4). This Court has the authority to award the requested Injunctive Relief, under Rule 65 of the Federal Rules of Civil Procedure, and Declaratory Relief pursuant to 28 U.S.C. §§2202 and §§2210.

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2), since the Defendants have all transacted business, or have caused business to be transacted in this District, and in connection with certain of the acts, transactions, and courses of business described in this Complaint, directly or indirectly, made and make use of the means or instrumentalities of interstate commerce, or of the U.S. Mails in the course of their business communications with Plaintiff.

## JURY DEMAND – PARTS ONE & TWO

3.      Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands that this case be tried before a jury on all facts so triable.

## THE PARTIES

1.      The Plaintiffs are Nancy M. Maresh (hereinafter referred to by her individual name where appropriate, or referred to as "Plaintiff"), whose address is 329 County Road 87J, Jamestown, Colorado 80308.

2.      The Plaintiffs real property is located at 329 County Road 87J, Jamestown, Colorado 80308 (referred to herein as "Plaintiffs real property").

3.      Defendant Washington Mutual Bank, F.A. a Federal Association (hereinafter referred to as "WaMu") legally changed its name to Washington Mutual Bank, on April 4, 2005.  On September 25, 2008, the United States Office of Thrift Supervision (OTS) seized Washington Mutual Bank from Washington Mutual Inc. and placed it into receivership of the Federal Deposit Insurance Corporation (FDIC). The FDIC immediately sold the banking subsidiaries to JPMorgan Chase Bank, N.A. within 24 hours, through a 118 page confidential Purchase and Assumption Agreement that has not been made public. All WaMu branches were rebranded as JPMC branches by the end of 2009 and JPMC only acquired certain assets and liabilities of WaMu and is NOT the successor in interest to WaMu.

4.  Defendant Husch Blackwell, LLP (hereinafter referred to as "HB") is a full-service business services law firm with 600 attorneys across the United States and in London, serving a client base of domestic, international and multinational corporations, located at 1700 Lincoln St, Suite 4700, Denver, Colorado 80302. *+ Defendant Mark Bell of Husch Blackwell + Individually.*

5.      Defendant The Castle Law Group, LLC (hereinafter referred to as "CLG") formerly Castle Stawiarski, LLC primarily handles foreclosure matters, as well as tax, corporate, partnership, UCC and related business law matters, with its principle place of business at 999 18th Street, Suite 2201, Denver, Colorado 80202.

6.  Defendant Larry Castle is a senior partner at The Castle Law Group, LLC and his business address is located at 999 18th Street, Suite 2201, Denver, Colorado 80202.

("Defendant Castle" may also be referred to herein as "Castle of CLG" when his actions complained of are averred to be connected to Defendant "CLG".)

7.   The Hopp Law Firm, LLC (herein after referred to as "HLF") provides legal services and representation to businesses, families and individuals with its principle place of business located at 333 West Colfax, Suite 400, Denver, CO 80204.

8.   Defendant Robert J. Hopp & Associates, LLC (herein after referred to as "RJHA") is a debt collector that provides legal services specializing in foreclosures, with its principle place of business located at 333 West Colfax, Suite 400, Denver, CO 80204.

9.   Defendant Robert J. Hopp is the managing member of the Hopp Law Firm and is a law partner and managing member of Robert J. Hopp & Associates, LLC and whose business address for both entities is 333 West Colfax Avenue, Denver, Colorado 80301.

("Defendant Hopp" may also be referred to herein as "Hopp of HLF & RJHA" when his actions complained of are averred to be connected to Defendants "HLF & RJHA".)

10.   Defendant Boulder County Public Trustee (herein after referred to as "BCPT") administers foreclosure proceedings for properties located in Boulder County and is a statutory mediator in the Colorado foreclosure process, located at 1790 38th Street, #100, Boulder, Colorado 80301.

11.   Defendant Zimmerman is currently a Deputy Trustee with the Boulder County Public Trustee located at 1790 38th Street, #100, Boulder, Colorado 80301. ("Defendant Zimmerman" may be referred to herein as "Zimmerman of BCPT" when his actions complained of are averred to be connected to Defendant "BCPT".)

## THE FACTS – PART ONE

12.   On March 12, 2009, J.P. Morgan JPMC Bank filed a foreclosure action with the Boulder County District Court.

13.   Nancy Maresh declared Chapter 7 bankruptcy in September, 2009, case #27787. Robert J Hopp filed a motion for relief from stay hearing in November, 2009. Judge

Sidney Brooks ordered attorneys to schedule an evidentiary hearing and to produce the original, wet ink signed promissory note.

13.    Robert J Hopp attorneys filed a motion to dismiss their motion for relief from stay since they were unable to produce the note.

14.    WAMU's promissory note was discharged in the Chapter 7 bankruptcy on January 4, 2010.The foreclosure action was still active since then in Colorado a bank is able to foreclose and eventually sell the property based only by the deed of trust. Therefore, the court order authorizing the sale of the property was still in effect.

15.    As a result of Nancy Maresh's emotional reaction to this, Hopp issued a withdrawal of the notice of election and demand for sale by public custody on June 3, 2010 effective date and then backdated the withdrawal to February 4, 2010. This administratively closed the 2009 foreclosure case.

16.    On September 28, 2010 a new foreclosure action, Case #10-24548, was filed. Plaintiffs requested and were denied a rule 120 hearing by Judge Roxanne Bailin. Judge Bailin issued an order authorizing the sale of the property on November 2, 2010.

17.    Due to conspiratorial manipulation between Robert J Hopp and the public trustee, Zimmerman, the property was sold on June 29, 2011. This conspiracy allowed the public trustee's office to manipulate their process and records in order to sell the property without the required notification and compliance requirements for the bid filing deadline.

18.    After receiving a 'demand for possession 'and '10-day notice from a The Castle Law Group for J.P. Morgan JPMC Bank, NA, Castle Stawairski, LLC, Nancy Maresh declared a chapter 13 bankruptcy.

19.    Castle attorneys filed a motion for relief from stay on April 6, 2012 and the motion was granted by Judge Tallman, even though Nancy Maresh made the case for no standing and fraud.

20.   Nancy Maresh filed an appeal on May 3, 2012. The Appellate panel told the new

attorney group, Husch Blackwell, LLP that they could pursue the motion for relief

from stay while the appeal was in litigation. Husch Blackwell started to pursue eviction

proceedings by posting a notice of demand for possession of property.

21.   Nancy Maresh filed a wrongful foreclosure lawsuit Case #2012 CV 823 in

Boulder County District Court on September 4, 2012. The lawsuit named Husch

Blackwell attorneys and Hopp attorneys as Defendant's. Husch Blackwell was granted

dismissal from the lawsuit which was objected to by Nancy Maresh. in January, 2013,

22.   On February 13, 2013 the Castle attorneys posted a demand for possession notice

on the property.

23.   At this time Nancy Maresh decided to file a federal lawsuit in order to seek

possible remedy for her situation.

24.   On April 1, 2013 Nancy Maresh filed her lawsuit into the US District Court in

Denver.

25.   On May 17, 2013 the Castle Law group posted a demand for possession of the

property.

26.   Then on June 6, 2013 the Castle Law group posted a Summons and Forcible

Entry and Unlawful Detainer lawsuit with a court date eight days later, on June 14,

2013. This case was in Boulder County Court #2013C31899.

27.   On June 7, 2013 Nancy Maresh filed a quiet title lawsuit in the Boulder County

District Court after two months of research and work on putting it together.

28.   On June 12, 2013 Nancy Maresh filed an answer and counterclaim in the Boulder

County Court. In her counterclaim she requested the case to be removed to the District

Court. Nancy was charged $306.00 which was the costs to open up a new lawsuit in

the District Court. Nancy has a receipt indicating it was for the "counterclaim to

District Court". After getting the District Court case number #13CV129 the clerk

Debbie left for about 15 min. and when she returned she whited out the case number.

Debbie then told Nancy that she had to go to her hearing on Friday and at that hearing

the judge would approve the transfer to District Court.

29.   On June 14, 2013 Nancy attended the hearing with Judge David Archuleta,

division 7 County Judge. J.P. Morgan Chase Bank was represented by Castle Law

group attorney. In spite of Nancy's objections the Judge denied Maresh's access to

move the case to District Court and issued a writ of restitution with eviction to occur in

seven days which is Friday, July 21, 2013. As of Tuesday, June 18th the writ of

restitution has not been filed into this case.

30.   On Monday, June 17, 2013 Nancy Maresh filed a chapter 13 bankruptcy in order To
        get the automatic stay.

<h2 align="center">CAUSES OF ACTION – PART ONE</h2>

The causes of action brought are (1) violation of 42 U.S.C. sec. 1983
(due process and equal protection clauses), (2) violation of 42 U.S.C. sec. 1985(3)
(ongoing conspiracy), (3) fraud by omission and nondisclosure, (4) common law
conspiracy, (5)negligent infliction of emotional distress, and (6) intentional infliction
of emotional distress. (7) Abuse of Process in Fed Action under 42 US 1983); (8) (Ex
Parte Young Injunction).

<h2 align="center">FIRST CAUSE OF ACTION – PART ONE</h2>

<h2 align="center">VIOLATION OF 42 U.S.C. SEC. 1983</h2>

31.    Plaintiff hereby fully incorporates all the paragraphs above as if they were specifically stated

herein verbatim.

32.    Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned,

each of the defendants sued herein was the agent and employee of each of the remaining

defendants and was at all times acting within the purpose and scope of such agency and

employment and that the acts were done under color of state law with the aid of a public

trustee, an agent of the state.

33.    At all relevant times herein, Plaintiff had a right under the due process and equal protection clauses of the state and federal constitutions not to be deprived of her constitutionally protected interest in her property. U.S.C. Const. Amend. 14.

34.    At all times relevant herein, the defendants were state actors and their conduct *was subject to 42 U.S.C. §§ 1983, 1985, and 1988*. *"Private persons, jointly* engaged with state officials in the challenged action, are acting 'under color' of law for purposes of Section 1983 actions." *Dennis v. Sparks,* 449 U.S. 24, 27-28 (1980). *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922 (1982).

35.    Both attorneys Larry Castle, The Castle Law Group, LLC, and Robert J. Hopp became state actors when they involved themselves in the legislative process by drafting the legislation which amended the foreclosure statute effectively eliminating the standard of proof to obtain an unfair advantage over homeowners in the Rule 120 and which Nancy M. Maresh found her constitutional rights were interfered with.

36.    Defendants, Robert J. Hopp, attorney Larry Castle, aided by his law firm, The Castle Law Group LLC (which is the law firm currently trying to evict plaintiff Nancy M. Maresh) and all the public trustees on behalf of their clients agreed to the conspiracy by drafting major portions of HB 06-1387 and committed the first overt act which eliminated the standard of proof required of the lender to show that the lender was the real party in interest with standing to foreclose and memorialized the conspiracy thus ensuring that the procedurally defective statute under the 14th Amendment would serve as a continuing constitutional tort.

37.    In drafting HB-1387, Larry Castle, his law firm The Castle Law Group, LLC, Robert L. Hopp, foreclosing lenders and their respective attorneys obtained an unfair advantage against the Plaintiffs and homeowners in the Rule 120 foreclosure proceedings by eliminating the standard of proof required to prove standing, and interfered with Nancy M. Maresh's Constitutionally protected right of due process.

38.    The Rule 120 foreclosure is like no other summary proceeding. It has no right to

appeal; no right to a jury trial; no right to counter-claim; no right to discovery; and the real party in interest defense has been muted by enactment of HB-1387 in spite of *Goodwin v District Court*, 779 P.2d 837 (Colo. 1989) which required the real party in interest defense be allowed.

39.    A Rule 120 Foreclosure is a summary proceeding administered by a Public Trustee who is an agent of the state. A judge's only function is to approve the foreclosure based on two issues: 1. Whether there is a default; and 2. Whether the homeowner is in military service.  Any other issues must be determined in a separate authorized action.

40.    The issuance by the Public Trustee's Deed of Trust which rest the right of title, and the eviction which removes the homeowner before the separate fair action is a pre-deprivation, even temporarily, under the 14th Amendment. *Fuentes v. Shevin*, 407 U.S. 67, p. 85 (1972).

## SECOND CAUSE OF ACTION – PART ONE
## (VIOLATION OF 42 U.S.C. sec. 1985(3)

41. Plaintiff hereby fully incorporates all the paragraphs above as if they were specifically stated herein verbatim.

42. Plaintiff alleges that the conspiracy was "ongoing and prolonged since Larry Castle and Robert J. Hopp actively drafted HB 06-1387 thereby ensuring that the conspiracy would be ongoing and prolong.

43. Larry Castle, The Castle Law Group LLC and the Public Trustee Association and Robert J. Hopp actively engaged in drafting HB 1387 to amend the foreclosure law to favor lenders and their respective attorneys in obtaining an unfair advantage over homeowners.

44. Washington Mutual Bank, F.A. and JPMORGAN CHASE BANK, N.A. and other

lenders and their respective attorneys had constructive or actual knowledge through the lobbyist (Mortgage Lenders Association) and the Colorado State Bar weekly newsletter to attorneys of the efforts of Larry Castle, Public Trustees, and The Castle Law Group LLC to amend HB-1387 favoring the lenders and their attorneys, and therefore had a tacit understanding. *Resolution Trust Corp. v. Heiserman,* 898 P.2d 1049 (Colo. 1995)

45. WASHINGTON MUTUAL BANK, F.A. and JPMORGAN CHASE BANK, N.A. agreed to the conspiracy expressly or tacitly when it hired Robert J. Hopp & Associates, LLC to foreclose on Nancy M. Maresh in the Rule 120 which was made procedurally defective under the 14th Amendment by HB- 1387. Resolution *Trust Corp. v. Heiserman,* 898 P.2d 1049 (Colo. 1995)

46. Plaintiff did not get a Rule 120 hearing after making 2 separate motions that "A Hearing Must Be Held".

47. Defendant's conspiracy in corrupting the legislative process to create an advantage in the Rule 120 was intended to deprive Nancy M. Maresh of property without due process and equal protection under color of state law.

48. The scheme of the conspiracy was born from the frustration of Larry Castle and Robert J. Hopp and their law firms, as well as the lenders with their inability to foreclose on properties whose notes were lost through the securitization of loans.

49. The scheme was to change the foreclosure statute to favor lenders and their attorneys by obtaining an unfair advantage over homeowners in the foreclosure.

## THIRD CAUSE OF ACTION – PART ONE

### (THEFT BY DECEPTION)

50. Plaintiff hereby fully incorporates all the paragraphs above as if they were specifically stated herein verbatim.

51. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the defendants sued herein was the agent and employee of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and employment and that the deceptive acts were done under color of state law with the aid of a public trustee who is an agent of the state.

52. WASHINGTON MUTUAL BANK, F.A. and JPMORGAN CHASE BANK, N.A. failed to disclose the material facts that it was subject to the provisions of the Pooling Service Agreement (PSA) which it failed to comply with and was known to JPMorgan Chase Bank, N.A. shown in *James Hendricks vs US Bank,* Case No. 10-849-CH.

53. Plaintiff alleges that transfers and assignments were required compliance under the WaMu Mortgage pass through Certificate series 2002-AR3 to comply with its provisions in the manner of assignments and recording requirements.

54. There were no assignments ever recorded.

55. According to the certified audit received by Nancy Maresh, the WAMU note and deed of trust were "separated and traveled into different patterns and are not with the same entity." According to the SEC pooling and service agreement the deed of trust and the note should have been transferred into the trust within 30 days of the closing date with both the note and deed of trust placed together with custodian.

56. The auditor continues in her report, confirming that "the note and the deed of trust are inseparable; the former as essential, the latter as an incident. The assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

57. All of the named defendants have not perfected or authenticated the filing of any security agreement.

58. The acts of the defendants were done to mislead Plaintiff and the courts into believing that they were successors in interest to the mortgage note.

59. The Rule 120 Foreclosure hearing was the perfect vehicle to carry on defendants' deception since Larry Castle, Robert J. Hopp and The Castle Law Group LLC orchestrated changes in drafting HB-1387 to change the foreclosure laws in which defendants' obtained an unfair advantage over homeowners' when the banks no longer had to show proof that they were the real parties in interest with standing to foreclose. All that was needed was the court's acceptance on blind faith.

60. Defendants' used the legislative and judicial process for their own self-serving interest with a conscious disregard to the constitutional rights of Nancy M. Maresh and all Colorado homeowners.

61. Defendants WASHINGTON MUTUAL BANK, F.A. and JPMORGAN CHASE BANK, N.A. through defendant law firm of Robert J. Hopp & Associates, LLC initiated non judicial foreclosure proceedings under Rule 120.(civil # 2011cv204001 ) scheduled for June 29, 2011. All of the Defendants did these acts herein alleged pursuant to, and in furtherance of, the conspiracy as above alleged.

62. Plaintiff alleges that HB-1387, in amending the statute 38-38-101 Section (II) which allowed the lender to submit proof on blind faith that it was the real party in interest violated the due process clause of 14th amendment which required a heightened burden of proof before a fundamental property right is taken by the lender.

63. Plaintiff alleges that the lenders burden of proof to show standing should be by "clear and convincing evidence as commanded by *Addington v. Texas,* 441 U.S. 418, (1979).

64. Plaintiff was harmed and has been caused to incur considerable expenses in order to get the proof that JPMorgan Chase Bank, N.A. is not the real party in interest with standing to foreclose, and has been suffering from extreme stress and anxiety, a feeling of hopelessness, loss of trust, loss of confidence in and feelings of betrayal by the legislative and judicial system by legislatures and judicial officers sworn to defend the

Constitution of the United States, shock, and emotional scarring, all compensable as emotional distress, and other damages.

## FOURTH CAUSE OF ACTION – PART ONE

65. Plaintiff hereby fully incorporates all the paragraphs above as if they were specifically stated herein verbatim.

66. All defendants continually negligently inflicted emotional distress on the Plaintiff.

67. Plaintiff alleges that Larry Castle, Robert J Hopp, and the Castle Law Group LLC violated their oaths when they drafted HB-1387 for their own self-serving needs and their clients at the expense of the constitutional protections guaranteed by the Constitution of the United States to citizens such as Nancy Maresh.

68. Plaintiff Nancy M Maresh suffered unnecessarily, not only physical symptoms such as severe continuous headaches, pain, anguish, severe emotional trauma, embarrassment, and humiliation as a consequence of the conduct of Larry Castle, Robert J Hopp, Husch Blackwell, LLP and the Castle Law groups breach of duty in imposed by their oath

69. Plaintiff Nancy M Maresh was, is, and, with a high degree of likelihood, will continue to be inflicted with emotional stress due to the negligence of Larry Castle, Robert J Hopp, Husch Blackwell, LLP and the Castle Law Group LLC.

70. As a result of the defendants extreme and outrageous conduct in pressing a wrongful foreclosure sale and pursuing eviction, Nancy M Maresh has suffered and with a high degree of likelihood, will continue to suffer emotional distress, embarrassment, humiliation that she was so betrayed by the legislative and judicial system which defendants perverted for their own self-serving ends.

71. Plaintiff has a cause of action for intentional emotional distress due to intentional wrongful foreclosure from which plaintiff is entitled for damages. *Young v. Bank of America* (1983) 141 Cal.App.3d 108; *Anderson v. Heart Federal Savings & Loan* Assn.(1989) 208 Cal.App.3d. 202.

72. WHEREFORE, Plaintiff demands judgment, including interest, against all defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of $3,000,000.00 plus the cost of this action, and such other relief deemed to be just, fair, and appropriate.

## FIFTH CAUSE OF ACTION – PART ONE

73. Plaintiff hereby fully incorporates all the paragraphs above as if they were specifically stated herein verbatim.

74. Plaintiff Nancy M Maresh alleges that the state foreclosure statute as amended through HB 06-1387 is procedurally defective under the 14th amendment Section one and therefore unconstitutional and entitled to injunctive relief under *Ex Parte Young,* 209 U.S. 123,126 (1908).

75. Plaintiff alleges that under Ex Parte Young, 209 U.S. 123,126 (1908) the public trustee, Colin Zimmerman as an official of the state is a proper Defendant to enjoin her from issuing of public by which leads to the lenders filing a FED action which is a pre-privatization.

76. Defendant did the things herein alleged to maliciously oppress Plaintiffs ability to defend in the foreclosure process. Plaintiff Nancy M Maresh                    are therefore entitled to exemplary or punitive damages in the sum to be determined by the court.

**The above stated actions were allowed to take place because state of Colorado and county-level malfeasance reflects a larger, destructive organized and systemic abuse in banking, practice of law and in public agencies. The national environment permitted theft by deception and conspiracy through breach of contract and conversion of mortgage notes which will now be covered in PART TWO.**

## PART TWO - INTRODUCTORY STATEMENT

Plaintiffs will further show that defendants have willfully, intentionally and wantonly engaged in a conspiracy through misrepresentation, deception and concealment, with the intent to cause great financial harm and injury to Plaintiff, for the Defendants unjust enrichment. Defendants have broken two contracts with Plaintiff; the first on a Promissory Note and the second one, on a Deed of Trust Note. Defendants' actions amount to a fraudulent conspiracy, theft by deception, securities violations and breach of contracts. In paragraph one of the Promissory Note, the Defendants represented themselves as "lenders" of money and represented the Plaintiffs as "borrowers" of money, when this action will show that Defendants never lent any money to Plaintiffs. This Complaint will also prove that Defendants have stolen (theft) Plaintiff's (Grantor) property without giving any valuable consideration through securitization and a procedural and substantively unconscionable breach of contract Promissory Note and Deed of Trust Note.

## COUNT ONE – PART TWO

## CONVERSION OF ADJUSTABLE RATE NOTE or PROMISSORY NOTE BY WAMU

1.    Plaintiff hereby fully incorporates all the paragraphs above as if they were specifically stated herein verbatim.

2.    On February 13, 2002, WAMU, through mortgage broker agent Teresa Lopez of Spirit Money Mortgage and broker/agent for Washington Mutual Bank, F.A. intentionally misrepresented to Nancy M. Maresh and Judith A. Blair that WAMU was going to lend Plaintiff $487,500.00.

4.    WAMU, through their agents and mortgage broker Lopez, knew or should have known and concealed on February 13, 2002 that these represented material facts were false statements and were stated to induce Plaintiff into executing an Adjustable Rate Note for the financial detriment of Plaintiff and the unjust enrichment of WAMU and their agents.

5.    WAMU, through their agents and mortgage broker Lopez, articulated to Plaintiffs on February 13, 2002 that the Plaintiff's loan was approved and the assigned loan No. 03-2368-006496346-5 via delivery of a Deed of Trust Note and Adjustable Rate Rider for $487,500 that was to be used to purchase the property located at 329 County Road 87J, Jamestown, CO 80455.

6.    On February 13, 2002 Plaintiff's executed an "Adjustable Rate Note" or hereinafter ("Promissory Note"), based upon these intentional false representations and executed said promissory note under the false assumption that WAMU was going to advance their own money in compliance with their representations, which were actually misrepresentations.

7.     On February 13, 2002 WAMU monetized (unilaterally) Plaintiffs adjustable rate promissory note (conversion) by depositing it into WAMU's liability or DDA account making Plaintiff the real creditor of the DDA account and unilaterally withdrew Plaintiff Maresh & Blair's funds from their DDA account to satisfy the seller of the property without the consent or knowledge of Plaintiff.

## COUNT TWO – PART TWO
## THEFT BY DECEPTION BY WAMU

8.     Plaintiff hereby fully incorporates all the paragraphs above as if they were specifically stated herein verbatim.

9.     On or about February 13, 2002 Plaintiff's executed a "Deed of Trust Note" based upon these same intentional false representations and executed said Deed of Trust Note under the false assumption that WAMU had advanced their own money to purchase the property from the seller as the Promissory Note so proudly boasted.

10.    On February 13, 2002 WAMU illegally filed a security instrument upon the property when WAMU knew or should have known that WAMU had never performed according to the contract thus violating the Federal UCC §9203.

11.    On February 26, 2002 WAMU committed Theft by Deception by falsely registering a security interest with the Boulder County Recorder of Deeds.

12.    On or about April 13, 2002 Plaintiff started making payments that were illegal and through the threat of foreclosure (extortion) obtained illegal payments of $355,110.00 from April 13, 2002 through August 8, 2008 from Plaintiff that WAMU knew or should have known were not legal and was outright theft.

13.    WAMU knew or should have known that WAMU was enforcing an illegal contract and were causing Plaintiff great financial harm for the unjust enrichment of WAMU.

14.    WAMU knew or intentionally concealed material facts from Plaintiff when the Deed of Trust Note executed by Plaintiff in paragraph "D" states "Lender is Washington Mutual Bank, F.A.", which was known to be false.

15.    In paragraph "E" of the Deed of Trust Note once again material facts that were known and intentionally concealed by Defendant WAMU states; "The note states that Borrower owes Lender $487,500.00 plus interest" which Defendants knew or should have known was a gross distortion and used false statements to get Plaintiff to execute such note at his financial detriment and the unjust enrichment of Defendant WAMU and their agents.

16.     WAMU concealed material facts from Plaintiff that if Plaintiff would have known that Plaintiff was siesing the property to WAMU without any consideration Plaintiff would not have executed the document.

17.     WAMU concealed through their agents, that the paragraph entitled, "BORROWER COVENANT'S" states, "that the Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the property and the Property is unencumbered, except for encumbrances of record."

18.     WAMU and their agents literally stole the property which was the Plaintiff's through the conversion process of the Adjustable Rate Note and filed a false security interest on the property through theft by deception.

## COUNT THREE CONVERSION OF THE ADJUSTABLE RATE NOTE OR
## PROMSSORY NOTE BY WAMU COUNT TWO – PART TWO

19.     Plaintiff hereby fully incorporates all the paragraphs above as if they were specifically stated herein verbatim.

20.     On February 13, 2002 WAMU monetized (unilaterally) Plaintiff's promissory note (conversion) by depositing it into WAMU's liability or DDA account making Plaintiff the real creditor of the DDA account and unilaterally withdrew Plaintiff's funds from the Maresh DDA account to satisfy the seller of the property without the consent or knowledge of Plaintiff.

21.     On February 13, 2002 Plaintiff's executed an "Adjustable Rate Note" or hereinafter ("Promissory Note") was based upon these intentional false representations and executed said promissory note under the false assumption that WAMU was going to advance their own money in compliance with their representations which were actually misrepresentations.

22.     On February 13, 2002 WAMU illegally filed a security instrument upon the property when WAMU knew or should have known that WAMU had never performed according to the contract thus violating the UCC §9203.

23.     WAMU and its agents literally stole the property which was the Plaintiff's through the conversion process of the Adjustable Rate Note and filed a false security interest on the property through theft by deception.

## COUNT FOUR COUNT TWO – PART TWO
## EXTORTION BY WAMU

24.     Plaintiff hereby fully incorporates all the paragraphs above as if they were specifically stated herein verbatim.

25.     WAMU acted in a respondeat superior relationship with Defendants JPMorgan Chase Bank (hereinafter "JPMC") starting in March of 2009 and who ordered, managed, control, directed and

even dictated the illegal collection efforts of JPMC Bank to collect based upon WAMU's committing conversion, breach of contract and theft by deception.

26.    On or about January 10, 2009 JPMC started their theft by deception by falsely stating that JPMC had the legal rights to the ownership of the Promissory and Deed of Trust Note registered as a security interest with the Boulder County Recorder of Deeds.

27.    On or about January 10, 2009 JPMC started attempting to collect payments that were illegal and through the threat of foreclosure (extortion) JPMC obtained illegal payments of $5,000 from Plaintiff when JPMC knew or should have known  that the Notes were not obtained legally and JPMC is an active participate in the theft by deception.

**28.**    JPMC knew or should have known that JPMC was enforcing an illegal contract and were causing Plaintiff great financial harm for the unjust enrichment of JPMC and the owners of the illegal notes

29.    JPMC knew and/or should have known or intentionally concealed material facts from Plaintiff that the alleged notes were in fact unenforceable for a broken  "Chain of Title" when JPMC Bank never registered or perfected any transfer according to the Uniform Commercial Code §9203.

30.    In paragraph "E" of the Deed of Trust Note once again material facts that were known and intentionally concealed by Defendant JPMC and paragraph "E" states; "The note states that Borrower owes Lender $487,500.00 plus interest" which Defendants knew or should have known was a gross distortion and used false statements to get Plaintiff's to execute such note at her financial detriment and the unjust enrichment of Defendant JPMC and their agents.

31.    JPMC knew or should have known that Plaintiff had granted, conveyed and seised his property free or without any consideration and knowingly and illegally attempted and accepted illegal payment from Plaintiff commencing on or about January 10, 2009.

32.    JPMC concealed through their employees that the paragraph entitled, "BORROWER COVENANT'S" states, "that the Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the property and the Property is unencumbered, except for encumbrances of record" and proceeded to illegally attempt and collect illegal payments when lack of perfection was very obvious from the least susceptible consumer or Plaintiff.

33.    JPMC knew or should have known that JPMC was collecting upon an unenforceable note due not only to a broken "Chain of Title" but the Mortgage Notes were illegally obtained without rendering any valuable consideration pursuant to the Federal UCC §§ 3303 and that a falsified security interest was filed by WAMU based on illegal conversion making the Notes altered pursuant to the Federal UCC §§ 3407.

52     JPMC knew and/or should have known that the illegally obtained notes supposedly executed by Plaintiff were in fact never transferred to JPMC thus breaking the "Chain of Title" and that JPMC continued to attempt and collected $7,505.00 from Plaintiff based upon these illegal documents.

53.     JPMC knew or should have known but actually ignored that WAMU never sold, transferred or assigned the subject loan to JPMC.

54.     JPMC Bank does not have nor ever has had any legal right to attempt to collect or collect any payments from Plaintiff when JPMC knew or should have known that they were now willful participates and/or conspirators in the case for their unjust enrichment and at the emotional, mental and financial detriment of Plaintiff through foreclosure sale and eviction proceedings.

55.     JPMC should have examined the files extensively with the Office of Comptroller of the Currency, the Securities and Exchange Commission and the FDIC as Receiver of WAMU.

57.     JPMC ignored all that information and proceeded to threaten Plaintiff with foreclosure and did sell Plaintiffs property and is now attempting to evict Plaintiff and where Plaintiff continues to maintain her possession interest in her property through June, 2013.

78.     JPMC should have known that WAMU never in fact endorsed the subject note nor perfected the alleged security interest in the note pursuant to the Colorado Commercial Code.

79.     Based upon Plaintiff's understanding and information it is further averred or alleged that JPMC knew or should have known that WAMU deposited the illegally obtained notes and converted them into corporate bonds and/or certificates of deposit and JPMC still continued to attempt and collected upon these illegally obtained notes.

80.     At no time did JPMC ever offer the Plaintiff with any "presentment" under the UCC §3501, the right to inspect the original or genuine notes, thus proving the deceptive and deceitful business dealings of JPMC Bank.

81.     JPMC became liable under all of the same factual allegations made by Plaintiff and supported by Plaintiffs three expert witnesses, that JPMC participated or was an willing participate in concealing breach of contract, securities violations, conversion, extortion, theft by deception, and supported the falsified representation made to Plaintiff and caused Plaintiff to unjustifiably rely on to her financial detriment and at the unjust enrichment of all the Defendants herein named and yet not named.

82.     JPMC supported the illegal or no perfection of said property by never researching if the seller had any rights including and not limited to any selling of servicing rights by WAMU were legitimate.

83.     Plaintiff has also stated claims against WAMU and JPMC under the applicable pleading standards.

84.     Plaintiff has alleged that the corporate and/or propriety defendants are associated in fact, through a history of interrelated business associations to constitute the enterprise for conspiracy purposes.

85.     In this case, Defendant JPMC became an acting conspiracy starting on March 15, 2008 with defendants Robert J. Hopp & Associates, LLC, The Hopp Law Firm, and Robert J. Hopp; on April 6, 2012 with The Castle Law Group, LLC, and Larry Castle; and on or about July 5, 2012 with Husch Blackwell, LLP and Mark Bell; and from 2008 through August 15, 2011 when The Boulder County Public Trustee and Colin Zimmerman conspired with JPMC and Defendant Robert J. Hopp & Associates, LLC, The Hopp Law Firm and Robert J. Hopp by taking "rights" to enforce the terms and conditions of an illegal breach of contract through conversion and theft by deception by using the mails and other electronic communications to do the same, and selling Plaintiffs property through an illegal auction sale and initiating and continuing various eviction proceedings while Plaintiff continues to suffer cognizable mental, emotional and physical harm and financial detriment while all the Defendants enjoy their unjust enrichment.

87.     Plaintiff seeks discovery and hereby states that this court should grant discovery of all named Defendants and not yet named Defendants in an attempt to ascertain the real perpetrators in this case.

88.     The Discovery should uncover whether WAMU was a real lender of their own money and did WAMU sell, transferred, securitized and even monetized unilaterally Plaintiff notes.

89.     Through Discovery the Plaintiff had inform this court and/or identify such participants such as the "depositor," "special purpose vehicle," "sponsor," "lender", "note holder" and/or the "holder in due course," " the real party in interest by production of all accounting ledgers including but not limited to WAMU and JPMC and its affiliates," "tranches," "bankruptcy remote vehicle" the trustee appointed to ensure that the "bondholders" would be identified and determine if they received their illegally monthly payments.

90.     "Where the mortgagee has "transferred" only the mortgage, the transaction is a nullity and the "assignee" having received no interest in the underlying debt or obligation, has a worthless piece of paper (Richard R. Powell on Real Property, §37.27 [2] (2000).

91.     JPMC knew or should have known that WAMU did not pay any valuable consideration to obtain the notes legally pursuant to the UCC §3-303 and if JPMC has any complaint it is with WAMU and the FDIC as Receiver, for dealing in questionable negotiable instruments and should

seek financial retribution from WAMU and the FDIC and other named and yet not named defendants and pursue further action with the Security Exchange Commission.

WHEREFORE, in consideration of that which is set forth in PART ONE and PART TWO counts ONE through FIVE above, Plaintiff requests that this Court declare the Notes void, and therefore unenforceable against Plaintiff, and also to declare that the Defendants are not possessed of rights as servicers or debt collectors under Plaintiff's notes. Further, it is requested that this Court declare the Deed of Trust Note(s) filed in the Boulder County Records Office as null and void and of no legal affect as a security interest against Plaintiff's Real Property and declare the foreclosure as illegal and null and void, *ab initio*.

### PART ONE & TWO - <u>DEMAND FOR DECLARATORY RELIEF</u>

92.    Pursuant to the Declaratory Judgment Act, this Honorable Court may enter a declaratory judgment to determine the rights of the Plaintiffs, regarding the aforesaid claims and controversies arising therefrom.

93.    Plaintiff demands that JPMC return $355,000 costs of disgorgement that were made from April 2002 through January 10, 2009 on money that was never lent, nor can be proven was ever lent to Plaintiff.

94.    Plaintiff demands $487,500 in damages from JPMC for causing an unperfected Deed of Trust Note to be recorded with the Boulder County Recorder of Deeds on February 26, 2002.

WHEREFORE, since it has been averted throughout this Complaint that Defendants have caused great financial losses to Plaintiff due to their breach of the terms of Plaintiff's Deed of Trust Note from WAMU by first of all, not lending the $487,500 to Plaintiff as was agreed to be lent under the Note(s); by undisclosed monetization of the Note(s) and not giving any value or consideration to Plaintiff for them as mandated by the UCC; by forging Plaintiff's signature of allonges in order to unlawfully securitize Plaintiff's Note(s) leading to massive unjust enrichment; by filing an unlawful, unperfected security interest via the Deed of Trust Note(s) with the Boulder County Recorder's Office absent authentication and proof that value was given for the Note(s) the Defendants have clearly caused great financial and emotional injuries to Plaintiff while at the same time unjustly enriching themselves, and by The Boulder County Public Trustee selling Plaintiffs property and various eviction attempts, with that in consideration by this Court (and jury), Plaintiff requests of this Court the following:

(1) Issue an Order declaring the Notes                          as void and unenforceable against Plaintiff by the Defendants and any others who might come along at anytime in the future.

(2) Order the Defendants to return the payments made by Plaintiff to Plaintiff, as specifically outlined in the Demand For Relief Sought above, since there was never any money lent under the Note(s)            and it cannot be proven that any money was lent, causing breaches of the Note(s).

(3) Order Defendants to pay the monetary damages to Plaintiff, as specifically outlined in the Demand For Relief Sought above, for their willing parts in not lending Plaintiff any money under contract to do so; for engaging in undisclosed monetization of Plaintiff's Note(s) for their unjust enrichment; for forging Plaintiff's signature on the alonges that had to be affixed to numerous securitizations in order to complete the unlawful conversion of the Note(s) into what investors thought was a marketable security; for filing an unlawful/unperfected Deed of Trust Note(s) in Boulder County Recorder's Office; and for not having any assignments on file in Boulder County Recorder's Office in order to prove any legal chain of collection title as servicers and debt collectors.

(4) Order the Defendant JPMC to return the original Notes or the value of the original Notes which would be $487,500.

(5) Order the forclosure sale as null and void.

(6) Restore Plaintiffs credit score.

(7) Issue an Order for the Defendants and the Defendants' heirs and assigns, whomever they may be in the future, to stop eviction proceedings and to never contact Plaintiff about this matter again.

Plaintiff further requests any other relief that this Honorable Court deems just and proper under the circumstances as set forth throughout this Complaint. Plaintiff attests that the statements averred in this Complaint are true and correct to the best of her knowledge, recollection, and ability.

Dated: June 19, 2013                               Respectfully submitted by:

                                                   Nancy M. Maresh

**VERIFICATION OF Nancy M Maresh**

I Nancy M Maresh declare as follows:

1. I'm the Plaintiff in the above-entitled matter.

2. I have read the foregoing Complaint and know the facts therein stated to be true and correct, except matters stated on information and belief, and I believe those matters to be true.

3. I declare under penalty of perjury under the laws of the State of Colorado that the foregoing is true and correct to the best of my knowledge and belief.

*Nancy M Maresh*

Nancy M Maresh

## CERTIFICATE OF SERVICE

We certify under penalty of perjury that we have served this Amended Complaint on JUNE 19, 2012 to:

Alfred A. Arraj Courthouse
901 19th St.
Denver, Co 80294

*Nancy M. Maresh  6.19.13*

Plaintiffs Nancy M. Maresh                              JUNE 19, 2013